# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 12, 2011

## CHRISTOPHER CARTER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 05-05922      Lee V. Coffee, Judge**

---

**No. W2010-01049-CCA-R3-PC  - Filed June 21, 2011**

---

The petitioner, Christopher Carter, appeals the denial of his petition for post-conviction relief.  In this appeal, he contends that he was denied the effective assistance of counsel at trial.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

R. Todd Mosley (on appeal), and Ruchie Patel (at trial), Memphis, Tennessee, for the appellant, Christopher Carter.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Rachel Newton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In July 2006, a Shelby County Criminal Court jury convicted the petitioner of one count aggravated assault and one count of assault, and the trial court imposed a sentence of 15 years' incarceration as a career offender.  *See State v. Christopher Carter*, W2006-02124-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Jackson, Nov. 15, 2007), *perm. app. denied* (Tenn. Apr. 7, 2008).  This court affirmed the convictions and 15-year sentence on appeal, *see id.*, and our supreme court denied the petitioner's application for permission to appeal on April 7, 2008.  The petitioner filed a timely petition for post-conviction relief in August 2008 alleging that he had been denied the effective assistance of counsel at trial.

The facts adduced at trial, as summarized by this court on direct appeal, established that Officer Ronnie Payne with the Memphis Police Department, who was off duty and relaxing with other members of a local recreational softball team, attempted to diffuse an argument between the petitioner and Ashley Millington on June 15, 2005, at the Arbors Apartments in Memphis. *See Christopher Carter*, slip op. at 1-2. After Officer Payne attempted to close the door to the petitioner's vehicle, the petitioner argued with the officer before reaching into his pants pocket for a knife. After a brief struggle, the two men fell to the ground, and the petitioner stabbed Officer Payne in the shoulder. *See id.* Officer Payne then ran to his apartment to retrieve his service weapon.

While Officer Payne was gone, the petitioner continued to threaten other people with the knife, including Ms. Millington and her boyfriend, Michael Langston. *Id.*, slip op. at 2-4. Mr. Langston testified at trial that the petitioner "'stuck the knife at me and said, 'You want some?'" *Id.* at 4. After Mr. Langston replied, "[N]o," the petitioner then ran in another direction. Officer Payne then returned to the scene with his weapon and ordered the petitioner to drop the knife. *See id.* The petitioner complied, but he then got back into his truck and drove off before being apprehended a short distance away.

The petitioner, testifying in his own behalf, confirmed that he engaged in an argument with Ms. Millington and Mr. Langton over a parking space, but he claimed that rather than diffusing the situation, Officer Payne "punched him in the face through his truck's driver's side window." *Id.* He said he tried to get out of the truck, but the officer slammed the door on his ankle and continued punching, forcing the petitioner to stab him in self-defense. *Id.* The petitioner denied threatening others with the knife and insisted that Officer Payne never identified himself as a police officer. *Id.* at 5.

At the February 17, 2010 evidentiary hearing, trial counsel testified that she began representing the petitioner at his arraignment and continued to represent him until the conclusion of his trial. Prior to trial, trial counsel received discovery materials from the State and provided a copy to the petitioner on November 4, 2005. Included in the discovery materials were witness statements. Counsel stated that, given the presence of witness statements in the discovery materials, she deemed personal interviews of the State's witnesses unnecessary. Counsel said that she utilized the services of an investigator whose primary duty was to locate potential witness Gara Mullica. Counsel said that "it took a year to try to get any information from her." Counsel stated that Ms. Mullica did not really provide her with any useful information and that, as a result, she chose not to present Ms. Mullica as a witness at trial. According to trial counsel, Ms. Mullica told them that she did not "see the actual altercation, which is what we needed. So, that's why she wasn't called as a witness."

Trial counsel testified that prior to trial the State made a plea offer to the petitioner that would have disposed of the charges in this case along with two other cases in exchange for a total effective sentence of 19 years, which was greater than the sentence imposed following the petitioner's trial.

Trial counsel could not recall whether she had instructed the petitioner's family to bring clothing for him to wear during the trial, but she testified that it was her practice to tell clients "if they are going to wear clothes, to have their family bring them." Counsel said that "there would be no reason for [her] not to have him dressed out if [they] had access to clothes." She said that she made no objection to the petitioner's appearing at trial in jail garb because the petitioner "was not adamant about not wearing jail clothes." She could not recall the petitioner's specifically asking to change clothes.

Trial counsel testified that she "probably talked" to the petitioner about testifying at trial but that it was not her practice to "coach" her clients. She said that she did not anticipate the petitioner's testifying at trial because of his "extensive record." She stated that she told the petitioner that he could be impeached by his prior record should he choose to testify at trial.

Trial counsel testified that the theory of defense was self-defense "and also that these people may not have seen things as clearly as they thought they would have." She said that "the main self-defense issue was against [victim] Ronnie Payne" and that "that charge went away" because the jury could not reach a verdict on that count. The State later dismissed that count. Counsel said she could not recall whether the petitioner testified at trial and that she had prepared the case to proceed with or without his testimony.

Trial counsel testified that she found no reason to challenge the jury instructions provided by the trial court.

During cross-examination by the State, trial counsel testified that the petitioner's trial was conducted in the "major violators" division of the Shelby County Criminal Court. She explained that "in layman's terms" that division prosecuted those offenders "who have a bad record or a record of a certain level classifications as far as convictions." She said that she had worked as an assistant public defender in the "major violators" division for several years and had worked for six years on the "capital defense team."

Counsel reiterated that she chose not to utilize Ms. Mullica as a witness because Ms. Mullica did not "put herself on the scene to see the initial altercation between [the petitioner] and Mr. Payne - the off-duty officer. So, because of that, I did not think that

she could do us any good." Counsel added that Ms. Mullica's unwillingness to speak with her added to counsel's reluctance to present Ms. Mullica as a witness, explaining, "That's not necessarily the person you want to put on the stand - someone that you have no real working relationship with."

Counsel said that she could recall no reason that she would not have allowed the petitioner to dress in "street clothes" for the trial, and she agreed that if the petitioner expressed a desire to wear street clothes and his family provided them, she would have made sure that he was permitted to change clothes. Counsel said that some attorneys believed that their clients might garner more sympathy from the jury if dressed in jail clothes but that it was not her practice to tell her clients that they should remain in jail garb.

Upon questioning by the post-conviction court, trial counsel explained that the public defender's office maintained a "closet full of predominantly men's clothing - pants, shirts, jackets, suits, shoes," that they use to attire those clients who do not otherwise have access to street clothes for trial. She also agreed that it was the trial court's practice to permit counsel to bring clothing to court and to allow incarcerated petitioners to change in the holding cell. She agreed that if the petitioner had expressed a desire to dress in street clothes for his trial, she would have been "happy to do that. I do that all the time."

Counsel said that, in addition to the name of Ms. Mullica, the petitioner provided her the name of only one potential witness, Ms. Mullica's friend Linda. She said that they could not find the witness because she had moved and the petitioner did not have any other identifying information for her. She added that, in any event, it was never clear that the potential witness "actually saw anything."

Upon further questioning by post-conviction counsel, trial counsel testified that the "proper procedure" for the family of an accused to provide trial clothing required the family to "drop the clothes off . . . the Thursday or Friday before trial; and then that gets put into their property. And then the deputies have him dressed out that way." She said that when the family provides clothing, "then the deputies are the ones that handle that." Counsel testified that if she knows the family has provided clothes but the petitioner has not been "dressed out," she would attempt to locate the clothing through the deputies. She said that an accused's attending trial in a jail uniform only becomes an issue when his right to wear street clothes is denied by the trial court. She testified that if the petitioner appeared at his trial in jail garb it was because he did not indicate a desire to do otherwise.

Gara Mullica testified that she was living with a friend in Memphis in July of 2006 and that she and the petitioner "had been friends for a while." She said that she expected to be contacted by trial counsel regarding the petitioner's trial and that she was

prepared to offer testimony if needed. She said that she spoke with an investigator for the public defender's office sometime prior to trial and that she met trial counsel for the first time on the day of trial. Ms. Mullica confirmed that she told the investigator that she did not witness the confrontation that led to the petitioner's convictions. Ms. Mullica did not know whether her friend Linda had witnessed the altercation. She testified that when she arrived on the scene, she saw the petitioner leaning against his truck and holding a knife and Mr. Payne, who had identified himself as a police officer, holding a gun. She said she saw the petitioner drop the knife and leave in his truck.

Ms. Mullica claimed that she brought clothing to court on the last day of the petitioner's trial and that trial counsel told her "he wouldn't need them." Ms. Mullica said that she came on the first day of trial but left and did not return until the last day of trial.

During cross-examination by the State, Ms. Mullica acknowledged that she made no attempt to contact trial counsel or any person at the public defender's office despite knowing that trial counsel had been appointed to represent the petitioner. She also acknowledged that just before the petitioner's trial, she went to stay with her mother in Arkansas and that the investigator from the public defender's office finally made contact with her while she was at her grandmother's house. She gave a telephone interview on July 10, 2006, only weeks before the petitioner's trial.

Upon questioning by the post-conviction court, Ms. Mullica again confirmed that she did not witness the altercation that gave rise to the charges against the petitioner. She said that she could not have told the jury who initiated the fight between the petitioner and Mr. Payne.

The petitioner testified that his "main issue is the clothing issue." He claimed that he told trial counsel that his family said they would bring clothes to court for him to wear at trial but that when she did not return with the clothes, he assumed that his parents had not done as they promised. He said that he later learned that his parents had, in fact, brought clothes to court. The petitioner submitted a receipt from the property room of the jail indicating that the petitioner's father, Dan Carter, had brought a shirt, tie, and pants to the jail for the petitioner on July 21, 2006. The petitioner testified that jail officials told him in October 2006 he would have to pay to have the items returned to his parents or they would be disposed of. The petitioner stated that he would have preferred to wear civilian attire, particularly when he took the stand.

The petitioner acknowledged that he, too, had "a hard time getting in touch with" Ms. Mullica and that he told Ms. Mullica to contact trial counsel. He said that Ms. Mullica told him that "she was doing everything she could" to make contact with trial

counsel. He claimed that Ms. Mullica's testimony would have corroborated his own that he did not threaten anyone other than Mr. Payne.

The petitioner said that he asked the investigator to photograph the inside of his truck to establish that the truck had no dash and therefore no glove compartment for him to have reached into, as witness Michael Langston had claimed. He said he also wanted trial counsel to offer as an exhibit a hand drawn diagram he had made of the scene. The petitioner acknowledged, however, that he understood that the diagram might not have been admissible as evidence.

During cross-examination, the petitioner acknowledged that he did not personally know that clothing had been delivered to the jail prior to trial. He said, however, that he believed that "it was [his] attorney's job to make sure [he] was dressed out." The petitioner conceded that he never asked trial counsel about the clothing before the bailiff brought him into the court room. He explained, "We didn't discuss anything else when she came back other than did they bring my clothes, which logically led me to believe she was going to check." The petitioner said he never mentioned the clothing issue to trial counsel again.

The petitioner testified that trial counsel told him that she did not want to call Ms. Mullica as a witness because she feared that Ms. Mullica might "comment on [his] good character which would open the door for the prosecution to bring up some past felonies" that had already been excluded by the trial court.

At the conclusion of the hearing, the post-conviction judge, who did not preside over the petitioner's trial, stated that he had reviewed the trial transcript as well as the entire trial record in the petitioner's case. The court concluded that the petitioner had failed to establish by clear and convincing evidence that he was denied the effective assistance of counsel. Regarding the petitioner's claim that trial counsel performed deficiently by failing to ensure that he was dressed in civilian clothing for trial, the court concluded,

> There is nothing before this record that would indicate that had [the petitioner] been dressed out in civilian clothing that it would have made a difference. There is nothing on this record that would indicate that the jury found [the petitioner] guilty because of the manner in which he was dressed.
>
> . . . . There is nothing on this record other than [the petitioner] saying that he would have felt better - that he wanted to be

dressed in civilian clothing.

The Court concluded that trial counsel "made a tactical decision not to call Ms. Mullica as a witness because [trial counsel] correctly concluded that there is nothing that [Ms. Mullica's] testimony would have made a difference in - her testimony would not have been helpful . . . because Ms. Mullica did not see the altercation." The court stated, "And this court finds, beyond any doubt, that the testimony of Ms. Mullica would not have made a difference in this trial, would not have been helpful towards [the petitioner's] assertion that he acted in self-defense." Finally, the post-conviction court concluded that trial counsel "did properly investigate this case." In a later-filed written order denying post-conviction relief, the post-conviction court reiterated these findings and specifically accredited the testimony of trial counsel regarding the decision not to call Ms. Mullica as a witness and the failure to have the petitioner dressed in civilian clothing for trial.

In this appeal, the petitioner maintains that trial counsel performed deficiently by failing to protect his right to appear at trial in civilian clothing, by failing to adequately investigate the case, and by failing to seek admission into evidence of a diagram of the scene drawn by the petitioner. The State contends that the petitioner failed to establish his claim of ineffective assistance of counsel by clear and convincing evidence.

We view each of the petitioner's claims with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

The petitioner first contends that his trial counsel performed deficiently by failing to ensure that he was permitted to dress in civilian clothing for his trial. Generally, "the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes." *Estelle v. Williams*, 425 U.S. 501, 512 (1976). No constitutional error occurs when an accused appears at trial in jail garb, however, unless he has, in fact, been compelled to appear before the jury so attired. *See id.* This rule does not create in the trial court an affirmative duty to ensure that the accused does not appear in front of the jury attired in jail garb; instead, the burden of raising the issue "rests with the accused and his attorney." *Id.*

Here, the petitioner asserts that he was compelled to appear before the jury dressed in jail clothing and that trial counsel performed deficiently by failing to lodge an objection. Although counsel had no specific recollection whether the petitioner had asked "to be dressed out," she stated that her practice was to ensure that those clients who wanted to attend trial in civilian clothing were able to do so. She stated that she routinely brought clothing to incarcerated clients in advance of trial. The petitioner himself testified that he mentioned the issue to trial counsel only once just before trial and that he did not mention it again, even when he was brought into the courtroom without being given the opportunity to change clothes. Under these circumstances, we cannot say that the petitioner established that trial counsel performed deficiently in this regard. Perhaps more importantly, the record

supports the post-conviction court's conclusion that the petitioner had failed to establish that he was prejudiced by attending trial in his jail uniform. Indeed, the record establishes that the jury clearly struggled over the evidence, as it was unable to reach a verdict on two of the four counts. It was able to amply parse the proof as to each charge based on its convicting the defendant of a lesser included offense in one of the remaining two counts. Accordingly, the petitioner is not entitled to relief on this issue.

The petitioner next contends that his trial counsel performed deficiently by failing to adequately investigate the case because she failed to photograph the interior of his truck. Again, the record supports the post-conviction court's conclusion that the petitioner was not prejudiced by the failure to photograph the interior of the petitioner's truck. The petitioner claimed that a photograph of the interior would have established that his truck did not have a glove compartment, which would have, he claimed, "discredited" the testimony of Mr. Langston that the petitioner retrieved the knife from the glove compartment. The location of the petitioner's knife prior to the beginning of the events that led to the petitioner's conviction, however, was irrelevant. Regardless of whether Mr. Langston accurately identified that location of the knife prior to the petitioner's using it to stab Officer Payne, Mr. Langston's testimony mirrored that of other witnesses that the petitioner stabbed Officer Payne and then wielded the knife toward Mr. Langston and others asking whether they "wanted some." Consequently, the petitioner has failed to establish that the absence of the photograph enured to his prejudice.

Finally, the petitioner asserts that his trial counsel performed deficiently by failing to seek admission into evidence of a hand-drawn diagram of the crime scene prepared by the petitioner. The petitioner has failed, however, to establish his claim because he failed to introduce the diagram at the evidentiary hearing and failed to establish that the diagram would have been admissible at trial.

Because the petitioner failed to establish by clear and convincing evidence that he was denied the effective assistance of counsel at trial, the judgment of the post-conviction court denying relief is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE